# IN THE COURT OF APPEALS OF IOWA

No. 21-1755
Filed March 30, 2022

**IN THE INTEREST OF K.S., J.S., V.S., and J.S.,**
**Minor Children,**

**H.S., Mother,**
 Appellant.
_____


 Appeal from the Iowa District Court for Polk County, Lynn C.H. Poschner,

District Associate Judge.


 A mother appeals the termination of her parental rights to four children.

**AFFIRMED.**


 Felicia M. Bertin Rocha of Bertin Rocha Law, PC, Urbandale, for appellant

mother.

 Thomas J. Miller, Attorney General, and Michelle R. Becker, Assistant

Attorney General, for appellee State.

 Alexandra M. Nelissen of Advocate Law PLLC, Clive, attorney for V.S. and

Jo.S. and guardian ad litem for all of the minor children.

 Lynn Vogan of Youth Law Center, Des Moines, attorney for minor child K.S.

 Devin M. Davis of Davis Law Firm, Des Moines, attorney for minor child

Ju.S.

 Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

 *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**DOYLE, Senior Judge.**

A mother appeals the termination of her parental rights to four children under Iowa Code section 232.116(1)(f) (2021).  She contends the State failed to prove the ground for termination by clear and convincing evidence and termination is not in the children's best interests.  She also contends that we need not terminate her parental rights because the children are in the custody of a relative and severing the parent-child bonds will be detrimental to the children.  We review these claims de novo.  *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

To terminate parental rights under section 232.116(1)(f), the court must find:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance [(CINA)] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The only question here is whether the children can be returned to the mother's care without exposing the children to any harm amounting to a new CINA adjudication.  *See In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) (noting a child cannot be returned to the custody of the parent if doing so would expose the child to any harm amounting to a new CINA adjudication).

Clear and convincing evidence shows that the children will be at risk of adjudicatory harm if returned to the mother's care.  The juvenile court removed the children from the mother's care and adjudicated them as CINA in July 2020 due to the mother using methamphetamine and selling it from the home.  Because the

mother failed to participate in services offered by the Iowa Department of Human Services (DHS) or follow the treatment recommended in various substance-abuse evaluations, the danger that led to the CINA adjudication continues to exist. The mother continues to use methamphetamine, with her last admitted use the week before the November 2021 termination hearing. As our supreme court has recognized, a parent's active addiction to methamphetamine can harm a child in the parent's care. *In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) (recognizing that "a juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care"); *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (stating that "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children"); *State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005) ("No parent should leave . . . small children in the care of a meth addict—the hazards are too great."). Because of the harm the mother's ongoing methamphetamine use presents to the children, they cannot be returned to her care. The grounds to terminate under section 232.116(1)(f) are met.

We turn, then, to the question of the children's best interests. *See A.S.*, 906 N.W.2d at 473 (stating that after a ground for termination is established, "we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights" (citation omitted)). In making this determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa

Code § 232.116(2). The "defining elements" are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

Terminating the mother's parental rights serves the children's best interests. The mother testified that she is not interested in substance-abuse treatment, nor does she believe she needs it. And she lacks any awareness of how her ongoing methamphetamine use has affected the children, as the juvenile court noted:

> It is impossible that [the] children have not observed how [the mother]'s behavior and personality are impacted by her chronic methamphetamine use. It is also impossible that her children have not had to cope or adapt to her ongoing use. [The mother]'s belief that by not using drugs in her children's actual presence she has shielded them from the trauma of substance-addicted parenting shows a lack of insight and lack of protective capacity. . . . Her use of methamphetamine impairs her parenting. [The mother]'s children have carried the burden of her addiction; if nothing else in their need to move to different homes with different caregivers and be supervised by DHS. [The mother]'s relationships with her children are damaged as a result.

More than fifteen months passed between the CINA adjudication and the termination hearing. During that time, the mother's behavior and statements show she is unwilling or unable to act in the children's best interests.

Finally, we must decide whether to apply any provision of section 232.116(3). *See A.S.*, 906 N.W.2d at 473. Section 232.116(3) states that the court "need not terminate the relationship between the parent and child" in certain situations. The mother seeks to avoid termination under section 232.116(3)(a), which applies when "[a] relative has legal custody of the child," and section 232.116(3)(c), which applies when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." But these provisions are not

mandatory. *See A.S.*, 906 N.W.2d at 475. Ultimately, the decision of whether to terminate parental rights depends on the facts of the case and the children's best interests. *See id.*

Although the children are in the legal custody of their father, the juvenile court declined to apply section 232.116(3)(a) to avoid termination in part due to "the parents' dangerous and unproductive relationship." Indeed, the family first came to the attention of the DHS because of domestic violence in the home. Another incident of domestic violence in which both the mother and the father were injured occurred just one month after the CINA adjudication in the presence of at least two of the children while all four children were in the home. In the nine months that followed, the father cooperated with the DHS, participating in therapy and domestic-violence education. The mother did not and was arrested in April 2021 on a domestic-abuse-assault charge against another person; she was violating a no-contact order and had methamphetamine in her possession at the time.

We have already found termination is in the children's best interests. "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *Id.* (citation omitted). Given the added evidence of domestic violence between the mother and the father, safety and stability are most likely to be established by terminating the mother's parental rights. We thus decline to apply section 232.116(3)(a).

The mother also seeks to avoid termination under section 232.116(3)(c) by claiming it would harm the children because of their close relationship. The four children, who range in age from eight to sixteen years old, no doubt have some

bond with the mother given how long she has been in their lives. The question is whether termination would be detrimental. There is no detriment to the two oldest children, who both support termination. And there is no basis for finding terminating the mother's parental rights would be of more detriment to the two youngest children than maintaining the parent-child relationship. The mother has not shown motivation to change the circumstances that led to the CINA adjudication and the children's removal. That is unlikely to change. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) ("[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future."). These children are not equipped with pause buttons, and denying them permanency in favor of the mother goes against their best interests. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014); *In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987).

We affirm the termination of the mother's parental rights to all four children.

**AFFIRMED.**